Good morning, Your Honours. May it please the Court, I'm Michael Smith for the Appellant, Connor Segla. And I'd like to reserve two minutes for rebuttal. I'll try to help. I'd like to dive right in. The Court requested that we address the effect of DD v. LA Unified School District, the recent Ninth Circuit en banc decision from November 2021, on the current appeal, and I'd like to do that. I think DD directly addresses what's on the appeal in this case in terms of the fact that our point is that going through the resolution procedures and mediation in the IDEA actually exhausted our administrative remedies. DD didn't directly address that. It couldn't because it wasn't properly before them during the oral argument and in the decision. It was essentially conceded by the plaintiff that they hadn't properly raised or kept that determination from the lower court. And this is not the case with our case. Let me ask you this, Counsel. In this case, you're seeking monetary relief, right? Yes, Your Honour. Does that make any difference for the nature of the relief you're seeking? I think after DD, probably not because DD made clear that they were not going to revisit Payne. After Frye, there was a footnote in Frye that suggested that maybe monetary damages alone would mean that you didn't have to exhaust administrative remedies. I think DD put that to rest pretty much by saying that they were not going to revisit Payne. Certainly, you know, if you say you want monetary damages, that's certainly part of it. But I think you'd also have to do a more searching look at the Frye issues, at the gravamen of the complaint and so forth. Let me ask you this then. What's your best argument that you have fully exhausted whatever you're required to exhaust in this case? I think the plain language of the statute is clear that it doesn't say that you need to go through hearing. And this is 20 U.S.C. 1415L. It just says that you should exhaust the remedies that are in 1415F and G. And those remedies are the resolution session, which gives an opportunity, as DD requested, that you meet with experts and try and resolve the issues that would be in front of a hearing officer. And then if that's not successful or they waive it, you can go to mediation under 1415E. And under the plain language of the statute, I believe that does meet the exhaustion requirements. Let me ask you this. I happen to be on a case called Paul G., written by Judge Schroeder of our court. And we found in a case that has a number of similarities to this one that the exhaustion had not occurred. After DD, does Paul G. still apply? And if so, in what way? Your Honor, thank you. Paul G. is somewhat an interesting case. Well, I think in Paul G., again, the plaintiff didn't explicitly argue that they'd exhausted their administrative remedies by settling. The case was a little unusual factually in that the California Department of Education had been dismissed from the case by OAH. And then the plaintiff settled with the school district without actually getting a determination, either through an IEP or any other administrative hearing, that a residential placement in-state was actually required. And I think without that, it would have left the court in a very difficult position because there was no determination at any stage, even through the agreement, that an in-state residential placement was actually necessary. So I think on its back... I'm sorry to interrupt. The court in Paul G. set forth three criteria for whether or not exhaustion had occurred. There, a settlement was achieved. But nevertheless, the court said since the state agency didn't have any opportunity to move on the claim in light of the settlement, there was no exhaustion. That's what happened here, and it seems to me absent the decision in DD, Paul G. would dispose of this appeal. Your Honor, I respectfully disagree because of the factual issues in Paul G. I think had Paul G. been presented where maybe an IEP team or some way through the agreement, it was on the record that the plaintiff actually required an in-state residential placement, they could have found that that would have met the requirements. I think the way that Paul G. was presented to the court, really, that they would have had to have something from a hearing officer showing that, in fact, there was a decision that there was a residential in-state placement actually required. I think it would have been also shown had there been an IEP, for example, as part of the record in that case showing that an in-state residential placement was part of the requirement. I would point to, in DD, the dissent by Justice Berzon referring to a Third Circuit case, I believe. I would think you'd want to talk about the concurrence of Judge Bumate, right? Well, I didn't think that directly addressed what we're saying in this case, which is that, and this is, I feel... Bumate seemed to put forth some reasons why a settlement would constitute exhaustion. I just don't know whether or not this case where you settled is the one where we extend Judge Bumate's concurrence and dicta into settled circuit law. I think, and I think in the majority, they clearly left it open that they would still consider. They said it was an interesting question, I believe, as to whether actually settling the case through the resolution session and mediation requirements would meet their exhaustion requirements. As I say, it was not before DD properly from the appellant, and that's why I think they did not directly consider that point. This is clearly not the case with our case. We raised it in the complaint, we raised it in our opposition to the motion to dismiss, and it's in our appeal brief. So clearly, squarely, it is now before the court, and I think that is a big difference from DD. You're at your two-minute mark, but we'll give you a little extra time because I'm going to ask you a question about this. I gather you're asking that we send it back so that the court can consider extrinsic evidence that it did not do before. Is that correct? That's correct, Your Honor. And what's your best argument that that should be done? Your Honor, looking at the agreement and the release that was in the agreement, I admit it's not a paragon of clarity. It certainly isn't, and it was started with a general release, and then there was a back and forth between the parties to narrow it down to what I believe and what we believe is just a release as to special education claims over which the Office of Administrative Hearings would have jurisdiction. If that's true, then why are torts mentioned? It seems to me that if you're right, then that's just surplus. It doesn't mean anything. Your Honor, it is somewhat surplus. I agree with that, and this is one of those things with the back and forth. Maybe more should have been trimmed from that part of the agreement, but I don't think it changes what we believe is clear in the plain language of the settlement agreement that only special education claims were waived. And I think the extrinsic evidence would have illustrated that for the district court, which was emails. The emails aren't on the record, but they were mentioned in the district court decision. Why don't we do this? We'll give you a little extra time to respond since I took you over this, but let's hear from Ms. Sutherland, and then we'll come back to you and get a brief rebuttal. Ms. Sutherland, you're up. Yes, thank you, Your Honor. May it please the court, Sarah Sutherland, on behalf of San Diego Unified School District. The district court was correct in granting the district's motion to dismiss. The motion to dismiss was made and decided on several grounds, not just that the claims were settled, also that they had to be exhausted, as well as immunity and other issues that are not at issue in this appeal. Plaintiff, in this case, is seeking to litigate his IDEA-based civil rights claims in the first instance in federal court. Paul G., I believe, is dispositive on this case, notwithstanding the decision in DD. In this case, settlement cannot amount to exhaustion because it would require federal judges to decide the appropriateness of an IEP and its contents and IDEA compliance in the first instance. The entire nature of plaintiff's claims not based on the IDEA require approving an underlying IDEA violation that in this court would then look at whether or not that violation was intentional or had this something more or could be decided as in FRI without looking at the IEP or IDEA compliance. The settlement agreement and interpretation of the settlement agreement was squarely decided by the district court judge on the four corners of the contract itself. It was very clear... Counsel, I suspect you would agree with the opposing counsel that that settlement agreement was not a model of clarity and had some inconsistencies like the tort that I mentioned. What is the school district's best argument that we should not send this back to the district court to consider extrinsic evidence in determining the meaning of the agreement? Because I think Paul G. is directly on point without regard to looking at the language of the settlement agreement. Plaintiff failed to exhaust because they settled without receiving a decision that what they contend was necessary for faith. Just be sure I understand. What you're saying, you're not addressing my question. You're saying whatever the answer to my question is, they haven't exhausted so it's done. Correct. Okay. Correct. But let's just say, again, this is just all hypothetical. Yes. If we were to find that exhaustion is not a problem, should we send it back to the district court to consider extrinsic evidence? No, Your Honor. Briefly, on the Paul G. point, I just wanted to point out that this case entirely concerns whether the student was provided appropriate educational services under the IDEA. And I think that's very important in terms of considering whether a settlement could constitute exhaustion, whether or not it does in every case or not. In this case, plaintiff's underlying complaint is entirely based on what educational services he was entitled to under the IDEA. That is different from DDE. That was an elementary student who was excluded through discipline. So I just wanted to address that point. Does it make any difference that they're seeking monetary damages as opposed to some type of injunctive relief or declaratory relief?  Yes, because the government of plaintiff's complaints are entirely based on an unproven IDEA violation that they then would have to prove in the first instance in federal court. If this case were allowed to proceed, regardless of the clarity of the settlement agreement, a federal judge, in the first instance, without agency expertise, without administrative procedures, would have to decide whether Connor's IEP was appropriate, whether the district should have convened more different IEP meetings, whether they should have offered something else. And that would be necessary in the first place before getting to the IDEA or 504 claims. And then from your perspective, that's what we decided in Apology, right? Correct. If it deals with the IDEA and IEP, it's got to involve the state education people. Correct. And FRI goes to that point as well. And when you look at the questions asked in FRI, there are no no and yes in this case. No, that the district court, a federal judge could not decide this case without deciding whether or not the IEP was appropriate. No adult or non-student could not bring this claim. And yes, the claim was resolved through the administrative mediation process. Connor did invoke the administrative process of the IDEA. But still, the difference from Apology, as I understand it, is Apology included a claim for injunctive relief, which this case does not. Right. This case is only monetary. You know, all the claims seeks is monetary damages. Is that correct? I believe that you are correct, Your Honor, but I don't think that the decision turned on whether that was not addressed. That's the monetary damage issue in Apology. And it was they were seeking for the California Department of Education to make in-state residential treatment centers available. A claim for injunctive relief and there's no injunctive remedy claim here. Now, first of all, let me ask you this. If this case went back to a district court for trial, is a plaintiff entitled to jury trial on the damage claim? Plaintiff has requested a jury trial on all claims. All right. So I don't see why this case couldn't be tried like any other jury case. Because it deprives the agency of and the federal court of the underlying administrative expertise necessary to decide whether or not this student's IEP was appropriate and this school district complied with it. In Apology, the decision focused on the fact that no one decided an in-state RTC was necessary for FAPE. So plaintiff could not then allege that it was a violation of other laws not to have made that IEP placement available. Mr. Smith commented about this in his argument. In this case as well, there was no determination at any stage that an RTC was necessary. And in this case, there was no agreement that the placement plaintiff is contending he was deprived was necessary for FAPE. And so it's on point with Apology in the sense that both cases are looking to litigate whether an appropriate education was provided under the IDEA without any determination of what that appropriate education would be. And that is the exact purpose for exhaustion is to decide per plaintiff whether or not their IEP was appropriately designed and implemented. In this case, in order for plaintiff to proceed on their claims under ADA 504 1983, the court would necessarily have to decide whether or not the IEP offers at the time they were made were appropriate. And the settlement agreement, ultimately, the student attended private school. They're not asking for this court to have found private school was what was necessary at the time he was allegedly excluded. At the time he was allegedly excluded, he was an adult. He was not compulsory. And he was attending a public high school under 18 years as in a just turning 18. At the time the case was filed, he was 20. And by the time it was settled, he was 20, almost 22 and exited from special education. And so unlike the issue of money damages, I don't think is the remedy sought in this case. I don't think is how applicable because the remedy being sought is compliance with the IDEA and an alleged intentional failure to do so. In DD, they were seeking monetary damages as well as opposed to injunction relief. Admittedly, the DD court did not talk about this that much, but they did require exhaustion. Did DD teach us anything about the nature of the remedy being sought or is it just silent on the issue? I think that that was left undecided, at least in the context of that case. And in DD, I believe the only disputed issue was whether the grovement of the plaintiff's complaint was an IDEA violation. And in this case, the grovement of plaintiff's complaint is an IDEA violation that has never been adjudicated and would be required to be adjudicated in the first instance in federal court after those IDEA claims had been settled. And so adjudicating those claims not only would violate the settlement agreement, but would also violate the exhaustion doctrine because the federal court and the agency would both be deprived of the purposes for that doctrine. This is unlike the Frye case where the issue was, can a member of the public bring a service dog into a public facility? That question can be decided under the ADA without considering the content of plaintiff's IEP. This question cannot be decided without considering the contents of plaintiff's IEP and whether they were appropriate. I'd like to ask a quick question before your time runs out, which now it has. Is it not the position of the concurrence in dicta in DD that requiring exhaustion prior to settlement wouldn't indeed disincentivize people to settle? Yes, I believe that that policy consideration was also considered. I think in the dissenting opinion, they discussed whether the settlement after the IDEA's prescribed mediation could amount to exhaustion. And I guess the thing I would like to make very clear is that the district is not arguing that a settlement of IDEA claims could never amount to exhaustion. It's arguing in this case, it could not be exhaustion because proof of the violations as well as agency expertise in deciding IDEA compliance would be necessary for a federal court to decide whether other laws were also violated by way of not complying with the IDEA. Other questions of Ms. Sutherland by my colleague? Thank you, Ms. Sutherland, for your argument. Mr. Smith, we're going to give you a couple of minutes to respond. I'm particularly interested in the exhaustion issue and Ms. Sutherland's comment that since you can't really decide the IEP and IDEA questions without getting the exhaustion issue involved, what's your best response to that? Thank you, Your Honor. I respectfully disagree. The issue with Connor's case, I would first like to point out, was nothing complex in terms of the IEP. As the complaint made clear, what had happened based on some actions of the school district was Connor was left without any school placement whatsoever. So for essentially two and a half years, he was without a school placement because the school district would not let him in to any schools based on notwithstanding that he had an IEP and they refused to hold an IEP. But it did involve an IEP and Ms. Sutherland's point, if I understand it correctly, and my understanding based on Frye and others, is that when you're talking about that, you've got an exhaustion problem. Isn't that correct? Well, Your Honor, I believe that the plain language again of the IDEA means that going through a resolution session and a mediation would meet the DD requirement that there be some sort of meeting with experts to try and resolve the fate issues before going into federal court. And I think the resolution session and mediation does meet those requirements and is suggested by DD that those would meet those requirements. But isn't Ms. Sutherland's point correct that, I mean, I think federal judges are good folks, but they don't have expertise in IEP issues, do they? Your Honor, they don't. But I think they could take the fact that a resolution session had been completed to be fairly confident that the fate issues had been addressed to an appropriate extent. And, of course, all the discovery procedures would still be open to the courts in the federal court civil case. And I think it overstates the complexity of the IDEA issues to think that a federal court could not address those considering that a resolution session has happened in the mediation. Okay. Thank you for your argument. Do either of my colleagues have additional questions for Mr. Smith? Hearing none, we thank both counsel for your argument. The case of Segla versus San Diego Unified School District is submitted, and we wish you both a good day. Thank you.
judges: TASHIMA, SMITH, Murphy